IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| BERTHA D. RIVERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 1:04cv481-CSC |
| ) | (WO) |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

**I. Introduction**

The plaintiff applied for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq, and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., alleging that she was unable to work because of a disability. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim on October 7, 2002. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[1] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The plaintiff appealed the Commissioner's denial of this application to this Court.

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

While the plaintiff's first application was in the appellate process, the plaintiff filed a second application. Following a hearing on the second application, the ALJ issued a favorable decision on October 28, 2004 in which the ALJ determined that the plaintiff was disabled. (R. 29). Thus, the period of disability at issue in this case is from the date of onset on September 1, 1999 until August 1, 2002.[2]

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1631(c)(3). Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment. Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be affirmed.

**II. Standard of Review**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential

---

[2] In his favorable decision issued on October 28, 2004, the ALJ determined that Rivers was disabled from August 2, 2002 through October 7, 2002, and that she has been disabled since October 8, 2002. (R. 33).

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

2

evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

---

diagnostic techniques.

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker,* 651 F.2d 408 (5th Cir. 1981) (Unit A).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III. Procedural History

### A. Introduction

Rivers was 46 years old at the time of the last hearing before the ALJ. (R. 1157). She has a high school equivalency diploma. (R. 1146, 1160). Rivers's prior experience includes work as a "child care worker, a presser in a dry cleaner, a laundry worker and a seamstress." (R. 32).

Following a hearing, the ALJ concluded that Rivers has severe impairments of "history of chronic lumbar strain, asymptomatic Human Immunodeficiency Virus (HIV) infection and history of overactive bladder and mixed urinary incontinence." (R. 31). The ALJ concluded that Rivers was unable to perform her past relevant work. (R. 32). Relying on the testimony of a vocational expert, the ALJ concluded that there were jobs existing in significant numbers in the national economy that Rivers could perform, and thus, she was not disabled. (R. 33).

### B. Plaintiff's Claims

As stated by Rivers, she presents two issues for the Court's review:

1. Whether the ALJ erred as a matter of law when he failed to show good cause for discounting the opinion of a treating

4

physician?

2. Whether the ALJ erred as matter of law when he failed to pose a complete hypothetical to the vocational expert?

(Pl's Br., doc. # 16, pp. 1, 6 & 9).

### IV. Discussion

A disability claimant bears the initial burden of demonstrating an inability to return to her past work. *Lucas v. Sullivan*, 918 F.2d 1567 (11th Cir. 1990). In determining whether the claimant has satisfied this burden, the Commissioner is guided by four factors: (1) objective medical facts or clinical findings, (2) diagnoses of examining physicians, (3) subjective evidence of pain and disability, e.g., the testimony of the claimant and her family or friends, and (4) the claimant's age, education, and work history. *Tieniber v. Heckler*, 720 F.2d 1251 (11th Cir. 1983). The court must scrutinize the record in its entirety to determine the reasonableness of the ALJ's decision. *See Walker,* 826 F.2d at 999. The ALJ must conscientiously probe into, inquire of and explore all relevant facts to elicit both favorable and unfavorable facts for review. *Cowart v. Schweiker,* 662 F.2d 731, 735-36 (11th Cir. 1981). The ALJ must also state, with sufficient specificity, the reasons for his decision referencing the plaintiff's impairments. Within this analytical framework, the court addresses the plaintiff's specific claims.

**A. Weight assigned to the opinion of a treating physician.** The plaintiff complains that the ALJ's reasons for discounting the opinion of her treating physician, Dr. Jay Beiswanger, are not supported by substantial evidence. (Pl's Br. at 7). The ALJ did not

5

accord much weight to the opinion of Dr. Beiswanger.

> Little weight is given to the opinion of Jay C. Beiswanger, M.D., that the claimant's overactive bladder and mixed urinary incontinence would necessitate frequent use of the bathroom and the need to stay in the bathroom for extended periods of time. Dr. Beiswanger's opinion was not supported by his progress notes, which indicate that this condition had improved and that the claimant was doing really well.

(R. 32).

Of course, the law in this circuit is well-settled that the ALJ must accord "substantial weight" or "considerable weight" to the opinion, diagnosis, and medical evidence of the claimant's treating physician unless good cause exists for not doing so. *Jones v. Bowen,* 810 F.2d 1001, 1005 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961 (11th Cir. 1985). The Commissioner, as reflected in his regulations, also demonstrates a similar preference for the opinion of treating physicians.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 CFR § 404.1527 (d)(2)). The ALJ's failure to give considerable weight to the treating physician's opinion is reversible error. *Broughton*, 776 F.2d at 961-2; *Wiggins v. Schweiker*, 679 F.2d 1387 (11th Cir. 1982).

There are, however, limited circumstances when the ALJ can disregard the treating physician's opinion. The requisite "good cause" for discounting a treating physician's

6

opinion may exist where the opinion is not supported by the evidence, or where the evidence supports a contrary finding. *See Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987). Good cause may also exist where a doctor's opinions are merely conclusory; inconsistent with the doctor's medical records; or unsupported by objective medical evidence. *See Jones v. Dept. of Health & Human Servs.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987). The weight afforded to a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence of the claimant's impairment. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). The ALJ must articulate the weight given to a treating physician's opinion and must articulate any reasons for discounting the opinion. *Schnorr*, 816 F.2d at 581.

The plaintiff argues that the ALJ took a single comment by Dr. Beiswanger that Rivers was "doing really well" "out of context," and the statement is insufficient to discount his opinion. (Pl's Br. at 7-8). After reviewing all the medical records[5], the ALJ rejected Dr.

---

[5] Although the ALJ did not recite all of Dr. Beiswanger's medical records in his final opinion, he adopted all the evidence he discussed in his earlier decision.

> The medical evidence and testimony received at the claimant's prior hearing were completely and adequately summarized in the hearing decision dated October 7, 2002. Such summarization of the medical and other evidence of record in that proceeding are adopted and incorporated by reference as though fully set forth herein."

(R. 31).

Beiswanger's opinion because "his opinion was not supported by his progress notes, which indicate that this condition had improved and that the claimant was doing really well." (R. 32). Dr. Beiswanger bases his opinion on treatment notes by Jay Wilkins, a certified Physician's Assistant, under his supervision and the supervision of other doctors in the office. *See* 20 C.F.R. § 416.913(1).[6] *See also* Social Security Ruling 06-03p.

Wilkins treated Rivers, under the supervision of Dr. Beiswanger and other doctors, from June 9, 2000 until August 22, 2002. (R. 637-666, 954). Rivers first presented on June 9, 2000. (R. 648-49). At that time, she complained of "some intermittent gross hematuria[7] over the past one month." (*Id.*) (footnote added). She also complained of "urge incontinence." (*Id.*) Rivers was diagnosed with Hematuria, Pyuria,[8] Bacteriuria,[9] Mixed Urinary Incontinence with stress and urge incontinence, and Nocturia.[10] After a cystoscopic examination on July 10, 2000, Rivers was prescribed antibiotics. (R. 648). Wilkins also noted that Rivers "does have some incontinence, but at this time [she] is not interested in therapy. . . .She may benefit from Prosed or some other type of antispasmodic." (*Id.*)

---

[6] Because Wilkins is a Physician's Assistant, he is not considered a "treating physician," or an "acceptable medical source." He would be considered an "other source." *See* 20 C.F.R. § 416.913 ("In addition to evidence from the acceptable medical sources listed in paragraph (a) of this section, we may also use evidence from other sources . . . Other sources include, but are not limited to – (1) Medical sources not listed in paragraph (a) of this section (for example, nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and therapists); . . ."

[7] Hematuria denotes the presence of blood in the urine.

[8] Pyuria denotes the presence of pus in the urine.

[9] Bacteriuria denotes the presence of bacteria in the urine.

[10] Nocturia denotes the need to frequent get up during the night to urinate.

Rivers returned to Dr. Beiswanger's office on August 14, 2000. At that time, Wilkins noted that she was

> doing really well. She states the Prosed helped her symptoms quite a bit. She does admit to going to the bathroom every hour during the day, has quite a significant amount of urgency. It seems that her urge incontinence is worse with better stress incontinence, *but both are minimal at this point*. She is getting up four or five times a night as well. Since she did benefit from Prosed, I think Detrol is in order. . . .

(R. 646) (emphasis added). Rivers was prescribed Detrol. (*Id*.) Rivers did not keep her follow-up appointment on November 14, 2000. (*Id*.)

On December 28, 2000, Rivers complained that she continued to have "some mixed urinary incontinence," but she did not have "any interval problems." (R. 646). She also admitted that she had not taken the medication Destrol as prescribed. (*Id*.)

She next saw Wilkins on April 23, 2001. At that time, she reported that she had been taking Ditropan with "excellent results." (R. 643-44). She was continued on Ditropan, three times a day. (*Id*.). On August 9, 2001, Rivers was diagnosed with minor bacteriuria and prescribed antibiotics. (R. 643). On August 20, 2001, Rivers complained of increased urgency. It was suggested to Rivers that she practice timed voiding but she declined to follow that suggestion. Her prescription for Ditropan was refilled. (R. 642).

On October 23, 2001, treatment notes indicate that Rivers had "frequent urination, [but] was doing well on Ditropan." (R. 641). A CT urogram on October 30, 2001 was normal. (R. 638-39). On November 2, 2001, Rivers was diagnosed with Bacteriuria and Urgency. (R. 638). Wilkins opined that Rivers' back pain was musculoskeletal and

9

unrelated to her bladder condition. (*Id.*) Because Rivers was also complaining of urgency, her medication was changed from Ditropan to Ditropan XL and the dosage was increased. (*Id.*) She was also prescribed antibiotics for the bacterial infection. (*Id.*)

Rivers returned to Dr. Beiswanger's office on December 23, 2001. At that time, she was "doing well. The Ditropan XL is working great." (R. 637). Wilkins did not anticipate seeing Rivers again for a year. (*Id.*)

Wilkins next saw Rivers on June 3, 2002. At that time, she complained of dysuria and frequent urination during the night. However, she "has urgency and sensation of incomplete emptying *only with the onset of these symptoms*." (R. 955) (emphasis added). She was diagnosed with Bacteriuria and Yeast Vaginitis and prescribed antibiotics for the infections as well as Prosed DS for inflammation of the urinary tract. (*Id.*). On June 12, 2002, her prescription for Ditropan XL was refilled. (*Id.*).

Also on June 12, 2002, Dr. Beiswanger wrote a letter describing Rivers' medical condition.

> Ms. Rivers suffers with overactive bladder and mixed urinary incontinence. This does necessitate frequent use of the bathroom and medical therapy to decrease the frequency of her symptoms. Urgency is a large component of this, and she may feel the need to stay in the bathroom until the bladder spasms subside.

(R. 666).

Dr. Beiswanger knew that the letter was to support Rivers's claim for disability benefits. (*Id.*) He did not opine that Rivers was disabled or even that she was unable to

10

work. (*Id.*). After increasing Rivers' medication in November 2001, Rivers did not present to Dr. Beiswanger's office again until she complained of an infection. When Wilkins saw Rivers on June 3, 2002, she was treated for an urinary tract infection and it was noted that her urgency symptoms began with the onset of the infection. (R.955). Thus, Rivers' own treatment records are inconsistent with and do not support Dr. Beiswanger's opinion that her condition causes "frequent use of the bathroom and the need to stay in the bathroom for extended periods of time." (R. 32).

Moreover, other medical records as a whole are inconsistent with and do not support Beiswanger's opinion that Rivers's overactive bladder and incontinence cause functional limitations. During the time period that Wilkins was treating Rivers, she was also treated by Dr. William Bone. On September 7, 2000, Rivers denied any "dysuria, frequency, or urgency." (R. 597). On September 25, 2001, Rivers "[d]enies any urinary tract problems." (R. 608). On October 30, 2001, Dr. Bone reported that Rivers "denies any genito-urinary complaints such as hematuria, dysuria, frequency, urgency, hesitancy, nocturia, incontinence, etc." (R. 570, 904). She denied such problems on December 24, 2001, January 31, 2002, and February 28, 2002. (R. 609-10, 611, 613, 615).

On April 29, 2002, Rivers complained to Dr. Bone of urinary incontinence "for the past several weeks." (R. 655, 889). On June 4, 2002, Rivers informed Dr. Bone that Dr. Beiswanger had treated her for a urinary tract infection. (R. 887). On August 5, 2002, Rivers again denied "any genito-urinary complaints such as hematuria, dysuria, frequency,

urgency, hesitancy, nocturia, incontinence, etc." (R. 884).

During the first administrative hearing on January 26, 2005, Rivers was asked why she could not work. While she initially responded "[m]y back, my feet, and my bladder," she later indicated she could not work due to the pain in her back and legs. (R. 1135). During the second hearing on June 10, 2005, Rivers stated that she could not work due to her back. (R. 1146, 1149). Finally, during the third administrative hearing, the ALJ and Rivers engaged in the following colloquy.

> Q: . . . Okay, well tell us about your disability, ma'am. What are the problems that you have that keep you from being able to work?
> A: Pain.
> Q: Okay, pain.
> A: Severe pain.
> Q: And where is it located?
> A: My back, down my legs, feet, hands.
> Q: Okay.
> A: The back and the legs are the worst.
> Q: Okay, so pain is a key part of the whole picture?
> A: Yes.
> Q: Okay.
> A: And having to go to the bathroom. I have to go to the bathroom quite frequently.

(R. 1163).

Based upon its review of the ALJ's decision and the objective medical evidence of record, the court concludes that the ALJ's rejection of Dr. Beiswanger's opinion that plaintiff's condition causes "frequent use of the bathroom and the need to stay in the bathroom for extended periods of time" is supported by good cause and substantial evidence.

12

**B.     Hypothetical questions posed to the vocational expert.**  The plaintiff also argues that the ALJ should have included functional restrictions related to her overactive bladder and incontinence in the hypothetical questions posed to the vocational expert, and his failure to do so constitutes error.  (Pl's Be. at 9-10).  Specifically, Rivers argues that the ALJ should have accepted Dr. Beiswanger's opinion that Rivers would require frequent bathroom breaks and extended periods of time in the bathroom, and thus, should have incorporated these restrictions in his hypothetical questions to the vocational expert.  The court disagrees.  For the reasons already stated, the ALJ had good cause to and properly discounted Dr. Beiswanger's opinion in this regard.

Next, the plaintiff argues that "when asked to consider functional limitations related to Ms. Rivers's urinary problems, the VE testified that such functional limitations would preclude employment (R. 1155)."  (Pl's Br. at 10).  Rivers relies on the following question posed to the vocational expert at the second administrative hearing to support her position.

> Q:     Sir, if you add to his hypothetical number one and number two the necessity for unscheduled breaks every hour.  She was having physical problems causing urination that, and *that was never resolved*, and it was requiring breaks, would require breaks every hour.  Would that preclude the jobs that you had listed?
> A:     Yes, I would expert that it would prevent the individual from sustaining those jobs.

(R. 1154) (emphasis added).  The problem with the plaintiff's argument is the hypothetical assumes a critical fact not supported by the medical evidence.  Rivers suggests in the hypothetical that her overactive bladder and incontinence conditions were never resolved;

13

however, the medical record does not support this suggestion. Treatment notes from Wilkins and Dr. Bone demonstrate that Rivers's urinary conditions were successfully treated with medication. When she experienced frequency and urgency, these symptoms were caused by urinary tract infections that were subsequently successfully treated with antibiotics. Thus, the ALJ did not err by failing to include in his hypothetical questions limitations which have not been established by the record. Thus, the court finds that the ALJ did not commit error in his questioning of the vocational expert. This court must accept the factual findings of the Commissioner if they are supported by substantial evidence and based upon the proper legal standards. *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

## V. Conclusion

The court has carefully and independently reviewed the record and concludes that substantial evidence supports the ALJ's conclusion that plaintiff is not disabled. Thus, the court concludes that the decision of the Commissioner is supported by substantial evidence and is due to be affirmed.

A separate order will be entered.

Done this 4th day of March, 2010.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE